# STANTON v. STANTON

No. 76–512.   Decided January 25, 1977

PER CURIAM.

This appeal brings before us for the second time the Utah Supreme Court's construction of Utah Code Ann. § 15–2–1 (1973),[1] which established 21 as the age of majority for males, and 18 as the age for females, as applied to a parent's obligation to support his children.   In our first opinion, we held that this distinction between males and females violated the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.   *Stanton* v. *Stanton*, 421 U. S. 7 (1975) (*Stanton I*).[2]   We, of course, did not decide how Utah was to eliminate the discrimination between the

---

[1] "15–2–1.   Period of minority.—The period of minority extends in males to the age of twenty-one years and in females to that of eighteen years; but all minors obtain their majority by marriage."

[2] After the decision in *Stanton I*, the Utah Legislature amended the statute to read:

"15–2–1.   Age of Majority.—The period of minority extends in males and females to the age of eighteen years; but all minors obtain their majority by marriage.   It is further provided that courts in divorce actions may order support to age 21."   1975 Utah Laws, c. 39.

The parties agree that the amendment does not apply to the present controversy.

genders, and thereby to determine at what age the appellee's duty to support his daughter terminated. Instead, we remanded the case to the Utah court for it to resolve this issue of state law. *Id.*, at 17–18. Our mandate also directed that appellant should receive $437.38 for her costs on appeal to this Court.

On the remand, the Utah Supreme Court did not consider the issue presented to it and held, instead, that the age-of-majority statute was constitutional as applied to females without considering the discrimination. That action does not comply with our mandate.

Upon receiving the mandate in *Stanton I,* the Utah Supreme Court remanded the case, without directions, to the District Court of Salt Lake County. That court correctly recognized, pursuant to the parties' stipulation, that the only issue before it was whether, in the absence of a validly worded statutory provision governing child-support age of majority, both sexes should be deemed to attain majority either at age 18 or at age 21. It resolved the issue by holding that, "for purposes of child support, children attain their majority at age 21." Accordingly, it awarded appellant a total of $3,646.18, consisting of $2,700 past due support money, $508.80 interest on the judgment, and the $437.38 costs award from this Court.

On appeal, the Utah Supreme Court, by a 3–2 vote, reversed. 552 P. 2d 112 (1976). Instead of deciding the issue before it, the majority held that the portion of the statute setting the age for females could be viewed in isolation from the portion setting the age for males:

> "Obviously the two provisions of the statute are separable and the Supreme Court of the United States in remanding this matter directed that we decide which age was correct and then legislate a bit on our own and say that the age of majority so chosen for the one sex is also the age of majority for the other sex.

"The oath we took when chosen as justices of the Supreme Court of Utah forbids us to encroach on the duties and functions of the legislature. However, we need not make any such determination. The age of the male child in this divorce case has never been called into question." *Id.,* at 113.

The court reasoned that the only child before it was a female and, therefore, that the age of 18 provided in § 15–2–1 was constitutional and still applied. As further support for its result, the court declared that the mother had no interest in the equal protection issue and that the parties expected the age discrepancy to apply when the divorce decree was drafted. Finally, as if to erase any remaining doubt about the basis of its decision, the court declared:

"Regardless of what a judge may think about equality, his thinking cannot change the facts of life. . . .

"To judicially hold that males and females attain their maturity at the same age is to be blind to the biological facts of life." *Id.,* at 114.

The court then undertook to reverse the entire judgment of the District Court, even including the $437.38 derived from this Court's mandate.[3]

This decision, obviously, is inconsistent with our opinion in *Stanton I.* The thrust of *Stanton I,* and therefore the starting point for the Utah court on remand, was that males and females cannot be treated differently for child-support purposes consistently with the Equal Protection Clause of the United States Constitution. Cf. *Craig* v. *Boren,* 429 U. S. 190 (1976). Apparently the Utah Supreme Court did not read our opinion as requiring that the child-support law must be nondiscriminatory to comply with the constitutional

---

[3] Even the appellee recognizes the impropriety of the reversal of the costs factor, and acknowledges that the $437.38 amount is "due and owing and agrees to pay said amount." Appellee's Motion to Dismiss 13.

standard. That, of course, is a misunderstanding. Accordingly, the judgment of the Utah Supreme Court is vacated, and the case once again is remanded for further proceedings not inconsistent with this opinion.[4]

MR. JUSTICE STEVENS, dissenting in part.

Petitions for rehearing perform the wholesome function of providing the losing litigant with a legitimate forum for adverse comment on an adverse decision. Appellate judges soon learn to discount hyperbole in such petitions.

Judges who are reversed by a higher court sometimes need a similar outlet, particularly when they remain convinced that their original decision was correct. For this reason opinions on remand should occasionally be read with tolerance and understanding, and the question whether this Court's mandate has been violated should be answered by reference to the *judgment* entered by the lower court rather than by reaction to a few unnecessary and unfortunate sentences

---

[4] As we did in *Stanton I*, we emphasize that Utah is free to adopt either 18 or 21 as the age of majority for both males and females for child-support purposes. The only constraint on its power to choose is the principle set out in *Stanton I*, and reiterated here, that the two sexes must be treated equally. There are at least two lines of authority that the Utah court legitimately might choose to follow. On the one hand, Utah Code Ann. § 68-3-1 (1968) provides that the common law of England is the rule of decision in the state courts, except where it conflicts with the Constitution or laws of the State or of the United States. Relying on that statute, the Utah court might elect to adopt age 21 as the age of majority in the absence of a valid statute governing child-support cases. On the other hand, the court might take note of the Utah Legislature's response to *Stanton I* in its enactment of the 1975 amendment of § 15-2-1 and read the amendment as an expression by the legislature that the public policy of Utah is to treat both males and females as adults at the younger age. By suggesting these two options, we do not mean to exhaust all other possibilities; we simply mention them to illustrate the fact that our opinion leaves open this state-law issue for the state courts to decide.

in a separate opinion joined by only two of six members voting.

In 1975 this Court held § 15–2–1 of the Utah Code unconstitutional and directed the State of Utah to eliminate that statute's discrimination between males and females. Utah was free to select the age of 21 or the age of 18 as the age of majority for all its citizens. Thereafter as Justice Ellett pointed out in his separate opinion, the "Legislature of Utah, in an attempt to satisfy the justices of the Supreme Court of the United States, passed an amendment to Section 15–2–1, U. C. A. 1953, so that it now reads: 'The period of minority extends in males and females to the age of eighteen years . . . .' " [1] This amendment applied only after its passage in 1975.

When this case reached the Utah Supreme Court for the second time in 1976, that court held that the pre-amendment age of majority was 18. The reasons given in the three separate opinions of the Justices constituting the majority of the court are not, in my judgment, nearly as persuasive as Justice Maughan's dissenting opinion. But, as Justice Maughan clearly recognized, the state court had the power to decide that the age of majority for both males and females under this statute prior to its amendment was either 18 or 21. The Utah Supreme Court has now held that it was 18. Even though the explanation of that holding makes reference only to females, once that determination has been made as a matter of Utah law, it applies by force of the Federal Constitution to males as well as females. Accordingly, both before and after the 1975 amendment to § 15–2–1, the statutory age of majority for both males and females in Utah was 18, not 21. The lower Utah courts are so interpreting the Utah Supreme Court decision.[2]

---

[1] 552 P. 2d 112, 113 (1976).

[2] Appellee's statement to that effect in his Motion to Dismiss 3, 10, is not disputed.

The judgment of the Utah Supreme Court was therefore consistent with this Court's mandate, except, of course, for its disallowance of costs. Other than an order allowing appropriate costs, there is no need for any further proceedings (or opinion writing) in that court. I therefore respectfully dissent from this Court's action.